UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JUSTIN FARROW,

                Plaintiff,

-against-

C.O. CORDEZ, Attica Correctional Facility, *et al.*,

                Defendants.

22-CV-5952 (LTS)

TRANSFER ORDER

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is currently incarcerated at Great Meadow Correctional Facility, brings this *pro se* action under 42 U.S.C. § 1983. He asserts claims arising from events at four different correctional facilities operated by the New York State Department of Corrections and Community Supervision (Attica, Clinton, Sing Sing, and Great Meadow Correctional Facilities) on different dates, involving different defendants.

For the following reasons, the Court (1) severs Plaintiff's claims arising at Attica Correctional Facility, and directs the Clerk of Court to open a new action for such claims and transfer it to the Western District of New York; and (2) severs Plaintiff's claims arising at Clinton and Great Meadow Correctional Facilities, and directs the Clerk of Court to open a new action for each set of claims and transfer both new actions to the Northern District of New York

## BACKGROUND

1.      Events at Attica Correctional Facility

Plaintiff asserts two claims arising at Attica Correctional Facility. First, Plaintiff alleges that on July 1, 2018, he was "removed . . . from the mess hall program in retaliation for threatening to file a complaint on C.O. Cordez for sexual harassment" and for "exposing a sex club in Attica Correctional Facility mess hall involving both staff and inmates." (ECF 2 at 11.)

Second, Plaintiff alleges that, on March 28, 2019, Correction Officer Nagle filed false disciplinary charges against Plaintiff in retaliation for his having filed grievances. Although the false charges were dismissed, Offender Rehabilitation Coordinator (ORC) Szczepanek refused to reinstate Plaintiff in the ART class after dismissal of the false charges. (*Id.* at 11-12.) "[T]he Attica C.F. executive team" and Superintendent J. Wolcott allegedly lied about conducting an investigation and evidence was destroyed. (*Id.* at 12.) Plaintiff brings his claims arising at Attica against Correction Officers Cordez and Nagle; Superintendent Wolcott; Deputy Superintendents J. Clinton and R. Bishop; ORC Szczepanek; and "John or Jane Doe" Sergeant "in charge" of the mess hall at Attica.

      2.      Events at Clinton Correctional Facility

On June 24, 2021 Plaintiff told staff at Clinton Correctional Facility and that he intended to hurt himself, and he was escorted to the observation area in the mental health unit (MHU). (*Id.* at 46.) During the three days that he spent there, "staff and inmates sabotaged [his] feed up trays by removing items" and failing to provide meals with adequate nutritional value. (*Id.* at 47.) Among other things, Plaintiff alleges that he learned about a widespread "digital piracy" scheme operated by staff and inmates who were stealing movies and music from the gallery kiosk. Plaintiff was denied psychiatric medication, his packages were withheld, and he was "medically keep locked" after staff falsely stated that he refused a Covid-19 test. (*Id.* at 49- 50.)

Plaintiff brings his claims arising at Clinton Correctional Facility against Defendants ORC Plante; D. Devereaux, from the Office of Mental Health (OMH); Dr. Ghalani, a psychiatrist; Sergeant "John or Jane Doe" in charge of Protective Custody; Superintendent Bell, and Deputies Sweeney, Blackson, Bishop, and Bradford.

3.      Events at Sing Sing Correctional Facility

Plaintiff alleges that, at Sing Sing Correctional Facility, he was sexually harassed by Correction Officer Woody, beginning in or about August 2019 (*id.* at 31); and by Barbara Thomas, after he was assigned to work in the Commissary beginning on October 25, 2021 (*id.* at 41). Plaintiff also alleges that, on October 18, 2020,[1] Correction Officer Delacruz made a false disciplinary report that he engaged in lewd conduct. (*Id.* at 35.)

Plaintiff asserts claims arising from his disciplinary hearings, including one before Lieutenant Panzorella on January 31, 2020 (*id.* at 18); one before Lieutenant Cousins on March 6, 2020 (*id.* at 22); and one on April 23, 2021 (*id.* at 43.).

Plaintiff contends that, "in retaliation for [Plaintiff's] constant complaints about . . . staff misconduct and [the] overall cover up," Captain Barnes removed Plaintiff from the inmate liaison committee (ILC) prior to the end of his term as a representative. (*Id.* at 29.) Deputy Superintendent K. Winship allegedly failed to investigate or take seriously Plaintiff's claims. (*Id.* at 18.)

Plaintiff also asserts claims arising from alleged deliberate indifference to his serious medical needs in connection with his suicide attempt on March 6, 2020. (*Id.* at 23-24.)

In addition, Plaintiff alleges that he "was involved in an assault on staff incident" with Correction Officer Clarke on April 19, 2021. Correction Officers Leslie, Schepis, Murray and "others" responded, and excessive force was allegedly used against Plaintiff, even after he was rear handcuffed. Plaintiff contends that he received inadequate medical treatment and was pressured not to request treatment in an outside hospital. (*Id.* at 42.)

---

[1] Although Plaintiff lists the date as October 18, 2021, this does not appear to be consistent with other dates in the chronology of events, and the Court therefore assumes that Plaintiff intends to refer to 2020, rather than 2021.

3

In the segregated housing unit (SHU), Sergeant Sanchez placed Plaintiff in a cell between one prisoner who was a gang member and another who is a "level 15 mental health patient." (*Id.*) Correction Officer Batolotti "did not list the majority of [Plaintiff's] property" on the 2064 property form but Plaintiff signed it because he was threatened with retaliation if he did not do so. While he was in the SHU, Plaintiff lost significant weight because he did not receive all of his meals, and Correction Officers Featherstone, Velasquez, John, "A," and others "refused to treat [Plaintiff] with dignity and respect." Plaintiff "realized" while he was in the SHU that there was an "earpiece wearing culture" and that both staff and prisoners were part of this conspiracy. Plaintiff suggests that events at all of the different facilities are related because of conspiracies among DOCCS staff. He states that he was labeled a "'hot pot' which is code in New York State Prison for someone who is to be marked by being followed and spied on 24/7 as well as harassed and that he is no longer to be treated with any respect." (*Id.* at 41.)

  4.  Events at Great Meadow Correctional Facility

On March 23, 2022, Plaintiff was transferred to Great Meadow Correctional Facility in Comstock, New York. (*Id.* at 52.) He asserts claims against unidentified individuals, such as John Doe "Correction Officer who slammed/closed cell onto me" (*id.*), who are not named in the caption of the complaint or listed on the docket. Plaintiff alleges, among other things, that staff intentionally sabotaged the toilet in his cell, making it inoperable; that on May 16, 2022, a correction officer intentionally closed the cell gate on Plaintiff; and that staff "hacked" the kiosk so that it did not function when Plaintiff attempted to use it.

Plaintiff attaches to his complaint a letter in which he describes his current conditions of confinement at Great Meadows Correctional Facility. (*Id.* at 14-15.) He alleges that he has spent one month in keep lock pending a review of whether he requires protective custody. Plaintiff

asserts that he has inadequate law library access, and limited paper, pens, and stamps. In addition, his mail has been sabotaged, and he has been denied some meals. Plaintiff has not named any individual defendant in connection with these claims, which are brought under 42 U.S.C. § 1983.

Plaintiff states that he also wishes to bring a claim against the New York State Department of Corrections and Community Supervision (DOCCS) under 18 U.S.C. § 1962, the Racketeer Influenced and Corrupt Organizations Act (RICO). He contends that, due to his knowledge of a conspiracy within DOCCS (involving contraband, drugs, and sex), staff continue to retaliate against him.

## DISCUSSION

**A.     Severance**

Rules 18 and 20 of the Federal Rules of Civil Procedure govern joinder of claims and parties, respectively. Rule 18 permits a plaintiff to join as many claims as he has against a particular defendant. *See* Fed. R. Civ. P. 18(a). Rule 20 permits multiple defendants to be joined in one action if: (A) any right to relief is asserted against them jointly, severally, or in the alternative arising out of the same transaction, occurrence, or series of transactions . . . ; and (B) any question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20(a)(2).

Although courts have interpreted Rule 20(a) liberally to allow related claims to be tried within a single proceeding, *Barr Rubber Products Co. v. Sun Rubber Co.,* 425 F.2d 1114, 1126-27 (2d Cir. 1970), "the mere allegation that Plaintiff was injured by all defendants is not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)," *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 167 (S.D.N.Y. 2009).

Rule 21 of the Federal Rules of Civil Procedure provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. In determining whether to sever a claim, the court considers "the two requirements of Rule 20 and additional factors, including (1) whether severance will serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence." *Kehr v. Yamaha Motor Corp.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (relying on *Laureano v. Goord*, No. 06-CV-7845, 2007 WL 2826649, at *8 (SD.N.Y. Aug. 31, 2007)). Put another way, courts "look to the logical relationship between the claims and determine 'whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Kalie v. Bank of Am. Corp.*, No. 12-CV-9192 (PAE), 2013 WL 4044951, at *3 (S.D.N.Y. Aug. 9, 2013) (quoting *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979)).

Here, Plaintiff's claims against dozens of defendants arising from events at four different facilities are not properly joined in one action. Any right to relief that Plaintiff has against these groups of defendants from different facilities does not arise out of the same occurrence, nor do his claims against them pose common questions of law and fact. Because the gravamen of Plaintiff's claims is the conditions of his confinement, and the mistreatment that he suffered, at each facility, severance of Plaintiff's claims arising at Attica, Clinton, and Great Meadow Correctional Facilities is warranted. Although Plaintiff includes some allegations suggesting that he views this action as involving a conspiracy of "earpiece wearing" DOCCS staff who have targeted him for retaliation, the Court concludes that these allegations do not provide a plausible basis for joining in one action these claims, which are otherwise unrelated.

The Court therefore severs Plaintiff's claims arising at Attica, Clinton, and Great Meadow Correctional Facilities. The Court directs the Clerk of Court to open a new civil rights action for Plaintiff's claims arising at each of the facilities outside this district as follows:

(1) an action for claims arising at Attica Correctional Facility, against Defendants Correction Officers Cordez and Nagle; Superintendent J. Wolcott; Deputy Superintendents J. Clinton and R. Bishop; Offender Rehabilitation Coordinator Szczepanek; and "John or Jane Doe" Sergeant "in charge" of the mess hall at Attica (collectively "the Attica Defendants"):

(2) an action for claims arising at Clinton Correctional Facility, against Defendants Offender Rehabilitation Coordinator Plante; D. Devereaux, from the Office of Mental Health (OMH); Dr. Ghalani, a psychiatrist; Sergeant "John or Jane Doe" in charge of Protective Custody; Superintendent Bell; and Deputies Sweeney, Blackson, Bishop, and Bradford (collectively "the Clinton Defendants");

(3) an action for claims arising at Great Meadow Facility, against Defendants DOCCS and John or Jane Does.

This action remains open, but will be limited to Plaintiff's claims arising at Sing Sing Correctional Facility, against Superintendent M. Capra; Deputies K. Winship, M. Daye, and A. Helms; Correction Officers T. Lewis, Jenkins, Martin, Walker, Woody, Delacruz, Vierra, C. Clarke, J. Leslie, R. Batolotti, M. Schepis, and B. Thomas; Sergeants Bonanno and Sanchez; Captain M. Barnes; Lieutenants Panzarella and Cousins; Offender Rehabilitation Coordinator B. Davis; "ADSP" S. Mitchell; Sing Sing Program Committee; and Chief Hearing Officer Mayes (collectively "the Sing Sing defendants").

**B.     Venue**

Under the general venue statute, a civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

For venue purposes, a "natural person" resides in the district where the person is domiciled, and an "entity with the capacity to sue and be sued" resides in any judicial district where it is subject to personal jurisdiction with respect to the civil action in question. *See* 28 U.S.C. § 1391(c)(1), (2).

Plaintiff's claims in the newly severed actions arise from events at Attica, Clinton, and Great Meadow Correctional Facilities that took place outside this district. Attica Correctional Facility is in Wyoming County, New York, which is within the Western District of New York. 28 U.S.C. § 112(d). Clinton Correctional Facility is in Clinton County, New York, and Great Meadow Correctional Facility is in Comstock, in Washington County, New York. Both Washington and Clinton Counties are in the Northern District of New York. 28 U.S.C. § 112(a). Venue of these actions is proper under Section 1391(b)(2) in the district where the events took place, that is, in the Western and Northern Districts of New York, respectively.

Plaintiff does not plead facts about the domicile of the individual defendants, and it is therefore unclear whether venue for any of these severed actions is proper in this district under Section 1391(b)(1).

Even if a case is filed in a jurisdiction where venue is proper, a court may transfer the case to any other district where it might have been brought "[f]or the convenience of parties and

8

witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In determining whether transfer is appropriate, courts consider the following ten factors: (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of the unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to the plaintiff's choice of forum; (9) trial efficiency; and (10) the interest of justice, based on the totality of circumstances. *Keitt v. N.Y. City*, 882 F. Supp. 2d 412, 459-60 (S.D.N.Y. 2011); *see also N.Y. Marine and Gen. Ins. Co. v. LaFarge No. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (setting forth similar factors). A plaintiff's choice of forum is accorded less deference where the plaintiff does not reside in the chosen forum and the operative events did not occur there. *See Iragorri v. United Tech. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001).

Here, transfer under Section 1404(a) appears to be appropriate in these cases. The underlying events for the severed actions occurred outside this district, and it is reasonable to expect that all relevant documents and witnesses would be in the districts where the claims arose.

Accordingly, the Clerk of Court is directed to transfer (1) the new action with claims arising in Attica Correctional Facility to the United States District Court for the Western District of New York; and (2) the new actions with claims arising at Clinton and Great Meadow Correctional Facilities to the Northern District of New York, all pursuant to 28 U.S.C. § 1404(a); *see D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) ("District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis.").

**CONCLUSION**

The Court severs Plaintiff's claims arising at Attica, Clinton, and Great Meadow Correctional Facilities. The Court directs the Clerk of Court to (1) open a new civil rights action for Plaintiff's claims arising at Attica Correctional Facility against the Attica Defendants identified herein, file a copy of the complaint and this order in that action, assign the new matter to my docket and transfer it to the United States District Court for the Western District of New York; (2) open a new civil rights action for Plaintiff's claims arising at Clinton Correctional Facility against the Clinton Defendants identified herein, file a copy of the complaint and this order in that action, assign the new matter to my docket and transfer it to the United States District Court for the Northern District of New York; and (3) open a new civil rights action for Plaintiff's claims arising at Great Meadow Correctional Facility, against Defendants New York State Department of Corrections and Community Supervision, John Doe, and Jane Doe, file a copy of the complaint and this order in that action, assign the new matter to my docket and transfer it to the United States District Court for the Northern District of New York.

The Court will address Plaintiff's claims arising at Sing Sing Correctional Facility by separate order.

The Court granted Plaintiff's request to proceed *in forma pauperis* in this action. Whether Plaintiff should be permitted to proceed further without prepayment of fees in each new action is a determination to be made by the transferee court. The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore *in*

*forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

  SO ORDERED.

Dated: August 23, 2022
    New York, New York

            /s/ Laura Taylor Swain
            LAURA TAYLOR SWAIN
            Chief United States District Judge